IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHICAGO ARCHITECTURE FOUNDATION, a not for profit corporation of Illinois | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 07-C-0764 Judge Charles R. Norgle |
| DOMAIN MAGIC, LLC | ) ) ) | |
| Defendant. | ) ) | |

PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S RULE 12(b)(2) MOTION [DCKT 26]
AND AMENDED MOTION [DCKT 29 & 32]
TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION

John R. Crossan
Stephanie K. Hor
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3420
FAX: 312-803-5299
crossan@chapman.com

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..................................................................................................1

STANDARDS ....................................................................................................3

ARGUMENT ....................................................................................................5

  I.  DEFENDANT HERE IS SUBJECT TO PERSONAL JURISDICTION
            UNDER THE "EFFECTS OF THE HARMS" TEST ..........................5

      A.    Defendant Committed an Intentional Tort by Using CAF's
              Name and Mark as its Domain Name and on the
              Objected-to Web Site................................................................7

      B.    Defendant's Objected-to Domain Name Was Intentionally
              Directed to Illinois ..................................................................8

      C.    Harm is Caused to CAF Here in Chicago, not Elsewhere ...........9

      D.    All Elements of the "Effects Test" are Met Here.........................9

  II.  DEFENDANT IS ALTERNATIVELY SUBJECT TO PERSONAL
        JURISDICTION UNDER PARTS 1 AND / OR 3 OF
        THE "SLIDING SCALE" TEST ........................................................10

      A.    Defendant Clearly and Actively Did Business in Illinois Over
              the Internet Through the Objected-to, Interactive Domain
              Name and Web Site................................................................10

      B.    Jurisdiction Applies here under the "Sliding Scale" Tests...........14

CONCLUSION ....................................................................................................14

EXHIBITS ATTACHED

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Aero Products Int'l, Inc. v. Intex Corp.*, 2002 WL 31109386 (N.D.Ill. 2002) .............................12

*Brach's Confections, Inc. v. Keller*, 2003 WL 22225617 (N.D.Ill. 2003).......................................4

*Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F.Supp. 766, 768 (N.D.Ill. 1998) .............................2, 7

*Donmar, Inc. v. Swanky Partners, Inc.*, 2002 WL 1917258 (N.D.Ill. 2002)..................................10

*Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824 (N.D.Ill. 2000) .........................................................................................................2, 3, 4, 7, 9

*Infosys Inc. v. Billingnetwork.com, Inc.*, 2003 WL 22012687 (N.D.Ill. 2003).............................12

*LFG, LLC v. Zapata Corp.*, 78 F.Supp.2d 731 (N.D.Ill. 1999) .........................................11, 13, 14

*McMaster-Carr Supply Co. v. Supply Depot, Inc.*, 1999 WL 417352 (N.D.Ill. 1999) ...........................................................................................................................4, 7, 9

*NeoMedia Technologies, Inc. v. Airclic, Inc.*, 2004 WL 848181 (N.D.Ill. 2004) ............................................................................................................................13

*Turnock v. Cope*, 816 F.2d 332 (7th Cir. 1987)..............................................................................3

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Penn. 1997)..................5, 10, 12

**Rules**

F.R. Civ. P. (12)(b)(2)......................................................................................................................1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO ARCHITECTURE FOUNDATION,<br>a not for profit corporation of Illinois | ) ) ) ) | |
| Plaintiff, | ) ) | No. 07-C-0764 |
| v. | ) ) | Judge Charles R. Norgle |
| DOMAIN MAGIC, LLC | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S RULE 12(b)(2) MOTION [DCKT 26] AND AMENDED MOTION [DCKT 29 & 32] TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION

Plaintiff, Chicago Architecture Foundation ("*CAF*"), respectfully opposes the motion of Defendant Domain Magic, LLC ("*Domain Magic*" or "*Defendant*"), filed April 13, 2007 [Docket No. 26], and its Amended Motion entered April 25, 2007 [Docket No. 32] (*"Motion"*) to dismiss this case for lack of personal jurisdiction, and states as follows responsive to the Motion.

### INTRODUCTION

An entity doing business on the Internet submits itself to specific personal jurisdiction where (A) it has had at least minimum contacts with the forum state, either (1) pursuant to the traditional "effects" test -- where it has intentionally committed tortious acts expressly aimed at and causing harm in the forum state, or (2) pursuant to a "sliding scale" test -- where it actively does business over the Internet using an interactive website, and (B) the claims asserted arise from defendant's forum-related activities.

Defendant here blatantly registered CAF's full name and trademark as its domain name, ChicagoArchitectureFoundation.org (the "*offending website*"). It further also prominently dis-

played CAF's full name and trademark on its offending website, causing likely confusion as to the sponsorship and origin of the web site. It nowhere linked to CAF's real site, at www.architecture.org. Defendant argues as if, in committing these admitted torts,[1] it did no more than merely and innocently maintain a plain vanilla, innocuous Internet website. Defendant also advances[2] the implausible excuse that the hyperlinks on the offending website -- offering only tour services *competing* with CAF's tours, and *none* from CAF itself -- were wholly beyond Defendant's control.

Defendant's actions were not so benign as it suggests. Defendant does not explain how Yahoo received a right to insert the various hyperlinks into Defendant's offending website. Defendant does not deny that Defendant earned, or hoped to earn, at least "click-through" revenue from Yahoo or the linked-to sites for providing or allowing those links on Defendant's site. Defendant certainly did more than just register and maintain the offending website: it called for or allowed the various competitive links on its website, and certainly those links appear with Defendant's knowledge and general permission. See Diamond Decl., April 26, 2007, attached as Exhibit 1, explaining how web advertising and "click-through" payments are set up and work.

Indeed, at least one other site exists on which another cybersquatter has used CAF's name and trademark as its domain name -- ChicagoArchitectureFoundation.*com*. The "placeholder" content appearing there, however, does *not* include links to competitors of CAF, does include a random link or two to CAF's web site pages, and does *not* display CAF's name

---

[1]  "Infringement of intellectual property rights is a tort." *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 835 (N.D.Ill. 2000)*see also Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F.Supp. 766, 768 (N.D.Ill. 1998).

[2]  See the Counts Affidavit and attachments, at pages 10-14 of the original Motion (not attached to the Amended Motion as served), which is not otherwise referred to in the original or Amended Motion.

and trademark prominently on the site[3]. *See* Exhibit 2 hereto, which is a screen print of the opening page of that dot-com web site, comprising just place-holder content.

Thus, Defendant's contention here that this Court has no personal jurisdiction over Defendant lacks merit on its face, taking the well-pled allegations of the Verified Complaint as true. By (1) registering CAF's name and trademark as Defendant's domain name, (2) prominently displaying CAF's name and trademark on the offending website, and (3) gaining or hoping to gain advertising or "click-through" revenue from its hyperlinks to competing Chicago tour operators, Defendant has effected more than sufficient contacts with Illinois so that it should reasonably have anticipated suing in and/or being haled itself into an Illinois court. But for Defendant's tortious acts, CAF would not have been harmed, as it was. See Osmond Decl., April 24, 2007, Exhibit 3 hereto. Because of Defendant's tortious cybersquatting and by its infringing on and diluting the trademark rights of CAF, it is reasonable and comports with all principles of due process for this Court to exercise personal jurisdiction over Defendant Domain Magic, and to deny the Motion and Amended Motion to Dismiss.

## STANDARDS

In deciding a motion to dismiss for lack of personal jurisdiction, a federal court accepts all well-pleaded facts in the Complaint as true, and resolves conflicts between affidavits in the plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987)

A court may have either specific or general jurisdiction over a defendant. *See, e.g., Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D.Ill. 2000). A defendant is subject to the court's general jurisdiction where defendant has, *inter alia,* conducted "continuous and systematic" activity in or directed to the forum state. *Id.* We do not

---

[3]   CAF has asked the owner of the ChicagoArchitectureFoundation.com site to transfer it to CAF's control. No money will be paid other than a nominal hosting or transfer fee.

contend here that general jurisdiction exists, although many facts seen here could support such a finding.

Even in the absence of general jurisdiction, a Court may alternatively exercise specific jurisdiction over a nonresident defendant where, as here, (1) the defendant is subject to service of process and (2) bringing the defendant into court does not offend "traditional notions of fair play and substantial justice", as embodied in the Due Process Clause. *See, e.g., McMaster-Carr Supply Co. v. Supply Depot, Inc.,* 1999 WL 417352, at *2 (N.D.Ill. 1999)(*citing Calder v. Jones,* 465 U.S. 783, 789-90 (1984)); *Euromarket,* 96 F.Supp.2d at 833-34. A defendant can be amenable to service of process pursuant to the Illinois long-arm statute, 735 ILCS 5/2-209(a)(1)-(2), to the full extent of the limits of due process. *Euromarket,* 96 F.Supp.2d at 834; *Brach's Confections, Inc. v. Keller,* 2003 WL 22225617 at *3 (N.D.Ill. 2003).

In cases involving Internet activities, either of two common fact patterns establishes that a defendant has had sufficient minimum contacts with the forum state for assertion of specific personal jurisdiction. A defendant has sufficient minimum contacts with a forum under, first, the "effects" doctrine where, as here, "1) the defendant has committed intentionally tortious actions 2) [that are] expressly aimed at the forum state 3) [and that] cause harm to the plaintiff in the forum state, which the defendant knows is likely to be suffered." *Euromarket,* 96 F.Supp.2d at 835 (*citing Calder v. Jones,* 465 U.S. 783 (1984)). In applying the effects doctrine in trademark infringement and cybersquatting cases, courts in the Seventh Circuit have held that although simply registering another party's trademark as a domain name may not be sufficient for personal jurisdiction to attach, personal jurisdiction is proper where there is "something more". This may include the targeting of the plaintiff in the forum state, as here, or an evident intent to focus activity toward the forum state, also seen here. *See, e.g., McMaster,* 1999 WL 417352, at *5; *Euromarkett,* 96 F.Supp.2d at 835 (*citing, e.g., Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.,* 34 F.3d 410, 411 (7th Cir. 1994)).

Alternatively, even if the "effects" doctrine were found not to confer personal jurisdiction over a defendant in an Internet case, jurisdiction may be found, second, by using a "sliding scale" test. Under the sliding scale test, cases dealing with Internet-based claims fall into one of three categories: (1) cases where a defendant actively does business over the Internet; (2) cases where a defendant's Internet presence is only passive, i.e., where the defendant has done no more than post information on a website that happens to be accessible also to users in remote jurisdictions; and (3) cases where the website at issue is interactive, allowing for an exchange of information between Internet users and the website host or its affiliates. *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Penn. 1997). In the first category of cases, personal jurisdiction is proper. *Id.* In the second category of cases, personal jurisdiction is improper. *Id.* In the last category of cases, "the exercise of jurisdiction is determined by examining the nature of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* Defendant's site here fell into either of the first and third category of cases under this alternative test.

### ARGUMENT

## I.   DEFENDANT HERE IS SUBJECT TO PERSONAL JURISDICTION UNDER THE "EFFECTS OF THE HARMS" TEST

Applying the effects doctrine here leads inexorably to the conclusion that Defendant's acts have subjected it to personal jurisdiction in Illinois. This is because:

(1)   the injury arising from Defendant's acts is felt most seriously in Illinois;

(2)   Defendant intentionally and purposefully directed its actions towards Illinois, causing both economic and non-economic harm in Illinois; and

(3)   Defendant knew or should have known that harm would be suffered in Illinois.

The injury from Defendant's tortious acts is felt chiefly in Illinois. As stated in its Verified Complaint, CAF is a not for profit corporation of Illinois with its principal place of business

- 5 -

in Chicago, Illinois. (Compl. ¶ 1.) CAF provides, among other services, architecture tours, education, and book store services in and from Chicago. (Compl. ¶ 6.) CAF has a valid trademark in its name "Chicago Architecture Foundation" due to its adoption and actual use in commerce and interstate commerce since soon after its founding in 1966. (Compl. ¶ 8.) "Chicago Architecture Foundation" has long been famous, within and outside Chicago and Illinois, for its tours, exhibitions, lectures, and other special events. (Compl. ¶ 9.)

Defendant directed its tortious activity toward Illinois. On about February 6, 2006, Defendant registered the website "chicagoarchitecturefoundation.org" as a domain name. (Compl. ¶ 13.) The offending website prominently displayed[4] the terms "chicagoarchitecturefoundation.org" and "Chicago Architecture Foundation", although CAF neither sponsored nor approved of the site or links. (Compl. ¶ 16.) The offending website contained a portal page with links to, among other things, architecture, bike, bus, and boat tour services in Chicago similar to and competing with those provided by CAF. (Compl. ¶ 15.) As Defendant acknowledges, a user who clicked on any of those portal page links was transferred to a web page containing links to the operators of these other tours. (Motion ¶ 8.)

Although Defendant states that all the links to other Chicago tour-providers' web sites were generated by a third party, Defendant admits that its site purposefully targeted Chicago: "The content associated with the web page ... was created strictly for the purpose of providing information about various products and services in and around the Chicago, Illinois area to visitors to the chicagoarchitecturefoundation.org domain name." (Counts Aff. ¶ 2., April 12, 2007.)

---

4    The offending site was taken down only after the TRO was entered by this Court, CAF's bond was paid into the Court's registry, and Defendant and its domain host were notified by our e-mail of same. Defendant then abandoned the domain name, which another client of ours coincidentally picked up and then, on request, transferred it to CAF's control. That domain name now links seamlessly to CAF's main site, at www.architecture.org.

Last, Defendant intended its web site to have its effects in Illinois. Defendant undoubt-edly was aware, or could easily have found out, as by a search on google.com or any other Inter-net search engine, that CAF is a famous entity of Chicago, Illinois. Moreover, Defendant has al-ready admitted that its acts were directly targeted at Illinois. (Counts Aff. ¶ 2.) With this knowl-edge, Defendant intentionally and purposefully directed its tortious acts at Illinois by registering CAF's name and trademark as its domain name, and using that name and trademark on its web site pages, causing injury by diverting earnings from potential tour customers, who would likely be confused and mistakenly use services listed on the infringing site, thus diminishing CAF's re-sources, reputation, and good will. *See Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F.Supp. 766, 768 (N.D.Ill. 1998)("If [the plaintiff's] intellectual property rights are infringed, as alleged, the injury will be felt in Illinois, that state in which [the plaintiff] is located"); *see also, e.g., Euromarket*, 96 F.Supp.2d at 836 (finding that an out of state defendant's activities were di-rected towards Illinois by virtue of the defendant's registration of an Illinois company's mark as its domain name and deliberate design of a website using the Illinois company's mark). By will-fully committing its tortious acts, Defendant knew that CAF would be injured in Illinois -- CAF's state of incorporation and its principal place of business. *See, e.g., McMaster*, 1999 WL 417352, at *4 (defendant knew it would harm an Illinois-based company in Illinois, its principal place of business, by defendant's intentional registration of the Illinois company's mark as de-fendant's domain name).

## A.  DEFENDANT COMMITTED AN INTENTIONAL TORT BY USING CAF'S NAME AND MARK AS ITS DOMAIN NAME AND ON THE OBJECTED-TO WEB SITE

There can be no doubt that choosing as its domain name "chicagoarchitecturefounda-tion.com" Defendant here acted intentionally. That name is too specific to CAF to be random, or accidental, or simply clever. An easy search on, e.g., google.com would have shown Defen-dant's personnel the over 100 thousand hits on CAF's own web site and on articles about CAF in news reports, educational journals, architecture commentary, and other sources.

Moreover, the fact that the content of the objected-to site contained links to Chicago-area bike, bus, and boat tours by many or most of the tour providers here *except for* CAF's own tours establishes beyond doubt that Defendants' personnel intended harm to CAF by siphoning off hits from CAF's own site, which is at architecture.org. The domain name ChicagoArchitectureFoundation.org[5], although a mouthful, is readily remembered by members of the public and affiliates of CAF[6], which of course is how the offending site of Defendant was first discovered promptly after it went live, by the owner and operator of CAF's fleet of tour boats who was seeking to access CAF's site but had forgotten the actual domain name that CAF used. (Osmond Decl., ¶ 6, Exhibit 3 hereto.)

Defendant's selection and use of the objected-to domain name, up to the time of notice of entry of the TRO against it by this Court, was and is an intentional tort against CAF.

**B.    DEFENDANT'S OBJECTED-TO DOMAIN NAME WAS INTENTIONALLY DIRECTED TO ILLINOIS**

Defendant does not dispute that its choice of the objected-to domain name containing the word "Chicago" and its having links on a portal page there to Chicago-area tour operators, apart from CAF and its tours, in return for anticipated "click-through" revenue, was directed specifically to Illinois.

Had any tour operator not paid Defendant for its linking to their sites, measured by clicks from Defendant's sites to such operators, Defendant certainly could and would have sued them in Illinois, not in Florida or Louisiana, to collect that revenue. Therefore, Defendant also is amenable to suit by others here for its torts, including the trade name and trademark infringement and

---

5    Internal capitalization is ignored by domain name registries, but aids user recognition and manual input.

6    The domain name caf.org has been held for many years by Charles A. Furnweger, an individual of California. CAF.com is held by a company with those initials in Venezuela.

the cybersquatting complained of here. CAF should not have to pursue Defendant in a distant forum to stop and to win redress for the tort directed against CAF here.

### C. HARM IS CAUSED TO CAF HERE IN CHICAGO, NOT ELSEWHERE

By choosing CAF's full name and trademark for the objected-to domain name, by using CAF's full name and trademark on pages of Defendant's objected-to web site, and by providing links to bike, bus, and boat tour operators in Chicago other than CAF, Defendant has caused harm to CAF in Chicago, not elsewhere. (Osmond Decl. ¶¶ 7-11.) Had Defendant put out just a place-holder site, linking variously to Chicago facts and events, architecture sites generally, and foundations including non-profits and building underparts, as does the corresponding chicagoar-chitecturefoundation.com site, then CAF might have no complaint. As it appeared full blown on about February 6, 2007, however, Defendant's objected-to domain name and web site were cal-culated directly to harm CAF by siphoning or diverting business away from CAF to other Chi-cago-area tour operators.

Defendant knew, or should well have known, that CAF earns funds supporting much of its educational activities by the public's paying to take CAF's docent-led tours and to attend CAF-sponsored events. (Osmond Decl. ¶¶ 3-4.) Thus, diversion of tour and event revenues to others caused by intentionally creating confusion over the source and sponsorship of the ob-jected-to web site and the links from it intentionally caused harm directly to CAF and its not-for-profit missions.

### D. ALL ELEMENTS OF THE "EFFECTS TEST" ARE MET HERE

The three tests of the *Euromarket* and *McMaster* cases for the effects of Defendant's tort being felt in Illinois being met, specific personal jurisdiction over Defendant Domain Magic is established. Defendant's motion to dismiss can and should be denied on this basis alone.

II. **DEFENDANT IS ALTERNATIVELY SUBJECT TO PERSONAL JURIS-DICTION UNDER PARTS 1 AND / OR 3 OF THE "SLIDING SCALE" TEST**

    A.    **DEFENDANT CLEARLY AND ACTIVELY DID BUSINESS IN ILLINOIS OVER THE INTERNET THROUGH THE OBJECTED-TO, INTERACTIVE DOMAIN NAME AND WEB SITE**

In its Motion, Defendant argues that this Court lacks personal jurisdiction over it because Defendant's registration of CAF's name and trademark as its domain name, without more, is insufficient to find "minimum contacts" here under the Due Process Clause. (Motion ¶ 13.) In support of its position, wholly ignoring the "effects" doctrine as above, Defendant would apply only the "sliding scale" test of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Penn. 1997), to support a finding that the offending site was merely "passive".

Of course, because Defendant's targeting of Illinois causes injury to interests in Illinois, the "effects" doctrine, above, confers specific personal jurisdiction over Defendant, and there is little need to apply the sliding scale tests to see if the minimum contacts requirement of due process is also met by any of such tests. *See, e.g., Zippo*, 952 F.Supp. at 1124 ("Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Different results should not be reached simply because business is conducted over the Internet."); *Donmar, Inc. v. Swanky Partners, Inc.*, 2002 WL 1917258, at *3 (N.D.Ill. 2002) (applying the sliding scale test only after noting that the effects test was not applicable).

Jurisdiction is plainly proper here under part 1 and/or part 3 of the sliding scale test. Here, the web site clearly and actively conducted business over the Internet through interaction with Illinois, with members of the public, and with the Illinois tour operators' web sites linked to. In unconvincingly contending that the offending website was entirely passive, (Motion ¶ 13), Defendant mischaracterizes its offending website. As Defendant has admitted in its Motion, the

offending website in this case was operated as or similarly to a portal.[7]  Defendant fails to acknowledge, however, that "[g]iven the nature and function of internet portals, it is not accurate to label them as 'passive.'" *LFG, LLC v. Zapata Corp.*, 78 F.Supp.2d 731, 736 (N.D.Ill. 1999).  In *LFG*, this Court found that the exercise of personal jurisdiction over the registrant of the portal site at issue was proper because portals are interactive sites.  A portal is "designed for user interaction; more important, its success hinges on the number of users interacting with it." *Id.* at 736-37.  In so holding, this Court in LFG noted that due to the unique nature of portals, cases cited by the defendant there, supporting a contention that its portal website was passive, were distinguishable as involving web sites that were not portals. *Id.* at 737 n.8.

The two additional cases cited by Defendant in its Amended Motion, at the ends of paragraphs 10 and 12, do not deal with Internet portal sites and so are inapposite here.

Defendant here attempts to distinguish *LFG* by contending for each of five propositions, none of which has merit.  Defendant contends, first, that its offending portal page on its website did no more than provide hyperlinks to visitors of the site, and simply was akin to an advertising page that was viewable by anyone with an Internet connection. (Motion ¶¶ 14, 18.)  This position is rejected in *LFG*'s contrary holding and so can be readily dismissed here.

Defendant also attempts to distinguish *LFG* by contending, second, that the rationale underlying this Court's finding personal jurisdiction there was that "the defendant's website hyperlinked to a website owned and operated by an Illinois corporation with whom the defendant had an extensive prior business relationship...", a fact that may be missing here. (Motion ¶ 17.)  A

---

7       The offending website here meets the *LFG* Court's definition of an Internet portal: "Portals are 'super' web sites that provide a wide variety of services, aiming to be 'one-stop shops' for Internet needs.  Portals typically offer access to ... directories, among other things -- all free to the user.  Portals provide the services at no cost to Internet users, and they generate their income by selling online advertising space." *LFG*, 78 F.Supp.2d at 736.

review of the Court's *LFG* opinion reveals that the defendants' non-Internet contact with Illinois was one of two separate facts establishing that the defendants there purposefully entered Illinois and so could reasonably anticipate suing or being required to defend themselves here, under the minimum contacts test of the due process clause. *LFG*, 78 F.Supp.2d at 737-38. Here, as in *LFG*, Defendant purposefully registered the offending website for the purpose of providing information and links to services of others in and around Chicago; as such, it could reasonably anticipate suing in and/or being haled into a court in Illinois.

In further attempted support of its argument that the offending website was merely passive under the *Zippo* tests, Defendant asserts, third, that there was no information exchanged between users and Defendant and no transactions actually took place in the short time between appearance of the site and its forced disappearance upon receiving notice of the TRO in this case. It argues that therefore its pages were "akin to an advertising page viewable by anyone possessing an Internet connection." (Motion ¶¶ 14-15.) It does not matter, however, whether Defendant had a relationship with any or all of the third party vendors that its portal page linked to, as operators of portal sites need not have a prior relationship with the vendors that are linked to from their sites. Additionally, even if this Court views the hyperlinks on the offending site as "advertisements," the Court should still properly exercise personal jurisdiction here because Defendant undoubtedly intended that the "advertisements" reach consumers in Illinois who were seeking CAF's services. *Aero Products Int'l, Inc. v. Intex Corp.*, 2002 WL 31109386, at *7 (N.D.Ill. 2002); *Infosys Inc. v. Billingnetwork.com, Inc.*, 2003 WL 22012687, at *4 (N.D.Ill. 2003). Here, the links accessed through the offending site transferred users to entities doing business in Illinois, but not to CAF, evidencing intent by Defendant that the links / advertisements affect interests in Illinois.

Defendant also claims, fourth, that the sponsored links were neither owned by nor controlled in any way by Defendant, and that Defendant did not receive any compensation from any product or service of the sponsored link vendors, at least in the short time that the offending site

was active. (Motion ¶ 16.) The Court in *LFG* was not persuaded by a similar argument made by the defendants then before it. Instead, this Court there found that,

> … In characterizing the [offending] site as 'passive,' defendants empha-size the fact that their service of connecting Internet users to other web sites generated no revenue for them. But there is no doubt that defendants intended for this service to generate revenue eventually. Providing free links to other web sites attracts more users to a portal, a high concentration of users attracts advertisers, and advertisements generate revenue."

*LFG*, 78 F.Supp.2d at 737 n.7.

Last, Defendant argues, fifth, that the offending website is "passive" in its being similar to that in *NeoMedia Technologies, Inc. v. Airclic, Inc.*, 2004 WL 848181 (N.D.Ill. 2004). In *NeoMedia*, the basis for the plaintiff's argument supporting jurisdiction was that one of the two offending websites of defendant contained a hyperlink to the "active" website of an Indiana company that sold infringing products available for purchase by Illinois customers. *Id.* at *5. Thus, according to the plaintiff there, the hyperlink from the defendant's site to the active third party site established the requisite connection with Illinois. *Id.* In finding, however, that it lacked personal jurisdiction, this Court in *NeoMedia* found "this connection alone is too tenuous to sat-isfy due process requirements." *Id.* Further, the *NeoMedia* Court distinguished the case before it from *LFG, supra*, 78 F.Supp.2d 731, by noting that the offending website before it was akin to an advertisement, used to attract new customers to its business, whereas, the offending website in *LFG* was itself the business, used to generate advertising revenue, which was the site's principal source of income. *Id.* ("Whereas [the offending] website promotes the company's products or services online, the *LFG* portal is in itself a product or service.").

Defendant's reliance here on *NeoMedia* is misplaced. The offending website here is closely similar to the portal in *LFG* and quite dissimilar from the website in *NeoMedia*. Like the

portal in *LFG*,[8] the offending website here was itself the alleged infringement. CAF does not allege that the products and services offered on the hyperlinked sites were infringing CAF's rights; instead, CAF's claims arise from Defendant's registration and maintenance of the offending website itself, which used and featured CAF's name and trademark but linked solely to non-CAF sites.

Furthermore, it seems that Defendant is in the cybersquatting business of registering and maintaining great numbers of websites for actual or potential profit, similarly to the activity objected to in *LFG*. As of March 29, 2007, Defendant had registered and was holding and/or servicing more than 56,000 domain names; by now, that number has risen to over 81,000 domain names. Exhibit 4 hereto.

**B.     JURISDICTION APPLIES HERE UNDER THE "SLIDING SCALE" TESTS**

Defendant has clearly subjected itself to personal jurisdiction in this Court under the first and/or the third prongs of the "sliding scale" test (as well as under the "effects" test, part I, above), by setting up the objected-to domain name and web site to target CAF and citizens in and visitors to Illinois to do its business in Illinois interactively with Illinois users and businesses.

## CONCLUSION

Defendant's Motion to Dismiss should be denied because Defendant's intentional and illegal actions were expressly aimed at Chicago, Illinois and caused CAF to suffer harm in Illinois, as Defendant knew or should have known. This Court's exercise of personal jurisdiction here, in denying the Motion to dismiss and in considering CAF's forthcoming motion for summary judgment against Defendant, fully comports with all "traditional notions of fair play and substantial justice."

---

[8]     Defendant has acknowledged that the offending site operated as a portal with paid advertising hyperlinks to various products and services. (Motion ¶ 18.)

DATED:  April 27, 2007

Respectfully submitted,


By /s/ John R. Crossan
    One of Its Attorneys
    John R. Crossan
    Stephanie K. Hor
    CHAPMAN AND CUTLER LLP
    111 West Monroe Street
    Chicago, Illinois  60603
    (312) 845-3420
    FAX: 312-803-5299
    crossan@chapman.com

# EXHIBITS ATTACHED

                                                                                                    No.

Declaration of Eric Diamond, website designer and consultant .......................... 1

Pages from 2nd cybersquatter site, chicagoarchitecturefoundation.com ............. 2

Declaration of Lynn Osmond, CAF President and CEO ..................................... 3

Reports from Domain Tools on Domain Magic's hosted sites ............................ 4

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHICAGO ARCHITECTURE FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 07-C-0764 |
| v. | ) ) | Judge Charles R. Norgle |
| DOMAIN MAGIC, LLC, | ) ) | |
| Defendant. | ) ) ) | |

DECLARATION OF ERIC DIAMOND
IN RELATION TO DEFENDANT'S RULE 12(b)(2) MOTION TO DISMISS COMPLAINT
FOR LACK OF PERSONAL JURISDICTION

I, Eric Diamond, hereby declare under penalties of perjury that the following is true and correct, based on my personal knowledge and information:

1.      I am a Principal of web consulting firm Firstwater, of 9237 Lavergne Ave., Skokie, IL 60077.  I have personal knowledge of and am competent to testify to the facts stated in this Declaration in open Court, and I would do so on request.

2.      My firm provides design research, innovation, planning and strategic design services to companies seeking to create superior online and offline experiences for their customers and stakeholders.  Firstwater was founded in 1999 to serve the Internet, advertising, and business community. We are based in the Chicago area.

3.      I have reviewed the Affidavit of Paul Counts, submitted at page 10 of the Defendant's Notice of Filing and original Motion in this matter, referring to attached exhibits A-D. I concur with much of what Mr. Counts states, but offer the following clarifications as to the statements he has made in the context of this lawsuit.

CAF oppn-ED decln 3.doc

4.      The content of the chicagoarchitecturefoundation.org web site shown in attachments A-D of the Counts Affidavit, or as Ex. 2 to the Complaint in this Action, is controlled by the owner of the web site to the extent that the owner may or may not chose to contract with Google, Yahoo, or another provider of pay-per-click or site-targeted advertising. There are variations as to how each provider implements its advertising program, but the basics are the same. A web site owner signs up with the ad server provider (such as Google or Yahoo) to serve ads onto the owner's site. Normally the site owner can choose the position of the ads, the layout of the ads, and the categories. In some cases, a site owner can specify that specific ads NOT appear on its site. The site owner may not, however, specify which ads do get placed on its site. A site owner is given HTML source code that creates a frame (the technical term is an "include" or an "iframe") on its site of a certain size and placement and the ad service provider controls the content within the frame. The ad service provider determines which ads get placed on a site. Advertisers can specify what kinds of sites they are interested in appearing on by bidding on keywords of interest, usually on a cost per mille (CPM) basis. Cost per mille is the cost per 1,000 impressions. Advertisers typically bid for placement on a price-per click basis.

5.      Each click on a link within one of these web page advertisements, as to "Chicago Architectural Tour" on the portal page of Defendant's site here, Ex. B to the Counts Affidavit, will (1) link the user to the advertiser's site, as here www.shorelinesightseeing.com, (2) generate a charge to that advertiser, here Shoreline Sightseeing (Ex. D) of perhaps $1.00 or $2.00 -- depending on the auction price agreed for each advertising "click", (3) generate a payment to the site owner (in this case Domain Magic, acting as site owner) of for instance $0.20 or $0.30 -- depending again on the contract rate, and (4) deposit the balance of the charged amount as a payment to the ad service provider. The rate of payment to the site owner is based on the amount of revenue earned by the service provider from clicks on ad links from the site owner's site.

6.      Paragraph 3 of the Counts Affidavit seems accurate, apart from the fact that the links from the first two pages, Counts Exhibits A and B, were set by Yahoo with general permission and consent of the domain registrant, Domain Magic.

7.     Paragraph 4 of the Counts Affidavit too seems accurate in that Exhibits C and D thereto were pages outside of chicagoarchitecturefoundation.org, but were linked to according to the contract between the domain registrant, Domain Magic, and Yahoo.  The advertising fees referred to were to be shared between Yahoo and the domain registrant, Domain Magic.

8.     The fact that there was no reference or link to CAF on this page is curious. This could be due to any one of three reasons: 1) Domain Magic, as the site owner deliberately filtered out links to CAF; 2) CAF did not advertise on the ad network that Domain Magic used on chicagoarchtiecturefoundation.org; or 3) CAF did advertise on the ad network Domain magic used for chicagoarchitecturefoundation.org but did not bid high enough to be displayed among the other links present. Based on the evidence presented in the exhibits there is no way for me to know which one is the case. However as a usability expert I can say that the URL "chicagoarchitecturefoundation.org" sets an expectation that a user would be intending to visit the Chicago Architecture Foundation site. Good usability practices would require the site owner at least to provide a courtesy link to CAF along the lines of: "Click here if you are looking for the Chicago Architecture Foundation" The fact that there is no link of this type anywhere in the exhibit suggests to me that the site "chicagoarchitecturefoundation.org" is meant to mislead users who visit it.

**EXECUTED UNDER PENALTY OF PERJURY THIS** 26 **DAY OF APRIL, 2007.**

_____
Eric Diamond

- 3 -

# EXHIBIT 2

chicagoarchitecturefoundation.com

http://www.chicagoarchitecturefoundation.com/          ▼    G ▾ Google

(0.199402 seconds)

**Sponsored Links**

## Chicago Programming
Computer Programming Services in the Chicagoland Area.
www.agilitydevelopment.com

## River Architecture Tour
Cruise the Chicago River on our Guided One-Hour Tour from Navy Pier
www.shorelinesightseeing.com

## Chicago Tour Packages
Enjoy the great packages on Chicago Architectural and Chinatown tours.
www.bwgrantparkhotel.com

## 25 Chicago Attractions
Museums, Tours, Cruises, Aquarium, Planetarium for 1 Low Price!
GoChicagoCard.com

## Chicago Condos
Chicago&#39;s Ultimate Home Search
www.atproperties.com

## Business Phone Solutions
Building VoIP/digital phone systems for Chicago&#39;s small businesses!
www.ips-link.com/Chicago

## Architecture Books/Gifts
Chicago Architecture Foundation Apparel, stationery, memberships
www.architecture.org/shop

## Free Chicago City Pass
Visit Museum &amp; Aquariums. Value At $160. Act Now!
Travel-RewardBlvd.com

## Hereschicago.com
Chicago&#39;s Directory for Meeting and Event Planners
www.hereschicago.com

## Top Movers Chicago IL
Get Free Moving Quotes from Moving Companies Chicago. Top Movers
TopMovingCompany4U.com

**Related Categories**

Chicago
Tours in Chicago
Navy Pier Chicago
Hyde Park Chicago
Union Station Chicago
Chicago Field Museum
Chicago Art Institute
Chicago Il Census
South Side Chicago
Chicago Historical
Society

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO ARCHITECTURE FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 07-C-0764 |
| v. | ) ) | Judge Charles R. Norgle |
| DOMAIN MAGIC, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF LYNN OSMOND IN SUPPORT OF PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S RULE 12(b)(2) MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

I, Lynn Osmond, hereby declare under penalties of perjury that the following is true and correct, based on my personal knowledge and information:

1.     I have been the President and Chief Executive Officer of the Chicago Architecture Foundation ("*CAF*"), Plaintiff herein, for over ten years now.  I have personal knowledge of and am competent to testify to the facts stated in this Declaration in open Court, and I would do so on request.

2.     CAF is a not for profit corporation of Illinois with its offices and sole place of business at 224 South Michigan Avenue, Chicago, Illinois 60604.

CAF oppn-LO decln 2 (3).doc

3.      CAF is in the business of providing, among other services, architecture tours, education, and bookstore services. CAF's name and trademark have become famous within and outside Chicago and Illinois for its architecture tours, exhibitions, lectures, and special events.

4.      All proceeds earned from CAF's tours and other projects in Chicago benefit CAF's educational and other operations in Chicago.

5.      CAF has used the name "Chicago Architecture Foundation" for nearly 40 years, since soon after its founding in 1966. Due to CAF's adoption and actual use of its name in commerce, it has developed valuable rights in the name and trademark "Chicago Architecture Foundation."

6.      On February 6, 2007, CAF discovered that Defendant Domain Magic, LLC ("*Domain Magic*" or "*Defendant*") had begun using CAF's name and trademark as its domain name chicagoarchitecturefoundation.org (the "*offending website*"). The owner and operator of CAF's fleet of tour boats, who was seeking to access CAF's website but had forgotten the actual domain name used by CAF, came by mistake and confusion upon the offending website.

7.      The offending website prominently displayed CAF's name and trademark "Chicago Architecture Foundation" and "chicagoarchitecturefoundation.org" and for a time actually confused our friend and supporter into believing that it was CAF's own web site.

8.      The offending website contained a portal page with links to architecture, bike, bus, and boat tour services in Chicago similar to those offered by CAF; however, there were no links to CAF's tour services or to CAF's website at architecture.org.

9.      At no time has CAF consented to Defendant's use of its name and trademark.

10.      Defendant's registration and operation of the offending website likely diverted earnings from potential tour customers from CAF during even the short time the offending site was active, from its going live on or prior to February 6 to issuance and effectiveness of the TRO on February 8, 2007. All such diversion of earnings directly harmed CAF in Chicago, its principal and sole place of business.

11.      The offending website actually caused confusion as to the source and sponsorship of the offending website, causing actual injury to CAF's reputation and good will. In another specific instance, a faculty member believing that the offending website was that of CAF created a link from his website at New Trier High School to Defendant's offending website, which link was corrected only after I personally telephoned the Principal at New Trier.

**EXECUTED UNDER PENALTY OF PERJURY THIS 24TH DAY OF APRIL, 2007.**

_____
Lynn Osmond

# EXHIBIT 4

# DomainTools

launches **Psychic Whois**
AJAX-ified

Welcome jrcrossan

| Whois ▶ | Domain Suggestions ▶ | For Sale ▶ | Auctions ▶ | Advanced Auctions ▶ | Domain Search ▶ |
| Domain Directory | Ping ▶ | Traceroute ▶ | My IP Address | Cheap Domain Name Registration |

## Reverse IP Report

### Reverse IP Report Order Form

**IP/Domain:** domainmagic.com     Get Prices

Enter a domain name or IP address into the search box to get result size and prices for a Reverse IP Report.

**Results**

| | IP | Results | Price |
| ☑ | 67.99.176.34 | 56,292 | $28.25 |

Add To Cart

### Description

Reverse IP Reports will create a full list of .com, .net, .org, .biz, .us, and .info domains that resolve to a given IP address. Exactly like the Reverse IP tool does except in an output that is easier to use.

The output is a text file containing just the domains on the IP address.

Reverse IP Report

**⚙DomainTools**

launches **Psychic Whois**
AJAX-ified

Welcome jrcrossan  Logout  My Account

Whois ▶ | Domain Suggestions ▶ | For Sale ▶ | Auctions ▶ | Advanced Auctions ▶ | Cheap Domain Name Registration | Domain Search ▶ | Domain Monitor | more ▶

Domain Directory | Ping ▶ | Traceroute ▶ | My IP Address

http://www.domaintools.com/products/reports/reverse-ip.html | G ▾ Google

## Reverse IP Report

### Reverse IP Report Order Form

**IP/Domain:** domainmagic.com    Get Prices

Enter a domain name or IP address into the search box to
get result size and prices for a Reverse IP Report.

**Results**

| | IP | Results | Price |
|---|---|---|---|
| ☑ | 67.99.176.34 | 81,307 | $36.75 |

Add To Cart

### Description

Reverse IP Reports will create a full list of .com, .net, .org, .biz, .us,
and .info domains that resolve to a given IP address. Exactly like the
Reverse IP tool does except in an output that is easier to use.

The output is a text file containing just the domains on the IP address.
Download Sample Report

## CERTIFICATE OF SERVICE

True copies of the foregoing **Plaintiff's Memorandum Opposing Defendant's Rule 12(b)(2) Motion and Amended Motion Filed April 24, 2007, to Dismiss Complaint for Lack of Personal Jurisdiction** are being personally served on Defendant's local counsel at the following address, via personal delivery on this 27th day of April, 2007:

> Jeffrey J. Levine, P.C.
> 20 North Clark Street, #800
> Chicago, IL 60602

and on Louisiana counsel* for Defendant by first class mail and by e-mail, postage prepaid, addressed as follows:

> David A. Vinterella, Esq.
> 18 Renpass Avenue
> Harahan, LA 70123
>
> davidvinterella@yahoo.com

> /s/ John R. Crossan
> Counsel for Plaintiff

---

\* Local and principal counsel for Defendant filed appearances in this case only on April 24, after the Court's and our admonitions that they must promptly do so. Mr. Vinterella has not yet sought admission *pro hac vice*, however.