

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO ARCHITECTURE FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case 07 C 764 |
| | ) | |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| DOMAIN MAGIC, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court is Defendant Domain Magic LLC's Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the Motion is denied.

## I. INTRODUCTION[1]

### A. Facts

Plaintiff Chicago Architecture Foundation ("CAF") was founded in 1966 and is in the business of providing architectural tours, education, and book services regarding architecture in Chicago. CAF has a membership of 8,600 individuals, and estimates an "audience" of 385,000 people for its various programs. 450 docents work for CAF who lead 90 different tours each year, for an estimated 200,000 people. According to CAF, more than half of its tour participants

---

[1] The facts are taken from the Complaint, Defendant's Motion to Dismiss, and Plaintiff's Response to the Motion.

1

are either out-of-state or international travelers. Additionally, CAF claims that the name "Chicago Architecture Foundation" is a famous mark, and is synonymous with the Chicago Architecture Foundation's products and services. CAF advertises its services on the internet under the domain name www.architecture.org. (visited 10/11/2007).

Defendant Domain Magic, LLC ("Domain Magic") is a Florida limited liability company, with an office in Hillsborough County, Florida. On February 6, 2006, Domain Magic registered an internet website with the domain name www.chicagoarchitecturefoundation.org. (the "offending website") (visited 6/18/2007)[2]. Domain Magic's website displayed the terms "chicagoarchitecturefoundation.org" and "Chicago Architecture Foundation." CAF alleges that Domain Magic registered this offending website despite actual knowledge of the existence of CAF's own website and trademark, and profited as a result.

A website such as Domain Magic's can generate income without selling goods or services. For example, Eric Diamond ("Diamond"), Principal of Firstwater, an internet web consulting firm in Skokie, Illinois, sets forth the basic structure of a website such as Domain Magic's.

> A web site owner signs up with an ad server provider, such as Google or Yahoo! to serve ads onto the owner's site. Normally the site owner can choose the position of the ads, the layout of the ads, and the categories. In some cases, a site owner can specify that specific ads NOT appear on its site. The site owner may not, however, specify which ads do get placed on its site. . . . The ad service provider determines which ads get placed on the site. Advertisers can specify what kinds of sites they are interested in appearing on by bidding on keywords of interest. . . Advertisers typically bid for placement on a price-per click basis.
> Each click on a link within one of these web pages advertisements, as to "Chicago Architectural Tour" on the portal page of Defendant's site here, will (1)

---

[2]When clicked on now, chicagoarchitecturefoundation.org diverts users to CAF's own website. (visited 10/11/2007).

2

link the user to the advertiser's site, as here www.shorelinesightseeing.com, (2) generate a charge to that advertiser, here Shoreline Sightseeing (Ex.D) of perhaps $1.00 or $2.00 -- depending on the auction price agreed for each advertising "click", (3) generate a payment to the site owner (in this case Domain Magic, acting as site owner) of for instance $0.20 or $0.30 -- depending again on the contract rate, and (4) deposit the balance of the charged amount as a payment to the ad service provider. The rate of payment to the site owner is based on the amount of revenue earned by the service provider from clicks on ad links from the site owner's site.

Pl.'s Resp., Ex. 1, ¶¶ 4-5. Domain Magic's own website purports to offer, *inter alia*, architectural tour services similar to those provided by CAF. However, Domain Magic is not affiliated with CAF, nor did Domain Magic's website contain a disclaimer alerting possible customers of this fact. CAF alleges that Domain Magic updated its website as recently as January 30, 2007.

## B. Procedural History

On February 8, 2007, CAF filed its Complaint in the Northern District of Illinois, alleging trademark infringement and trademark dilution under 15 U.S.C. § 1125, violations of the Illinois Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510/1 *et seq.*, violations of the Illinois Trademark Registration and Protection Act, 765 ILL. COMP. STAT. 1036/1 *et seq.*, violations of the Lanham Act, and common law unfair competition. Also on February 8, 2007, the court entered a temporary restraining order enjoining Domain Magic from using the trademark "Chicago Architecture Foundation."

On April 13, 2007, Domain Magic filed its Motion to Dismiss pursuant to Rule 12(b)(2). CAF filed its Response on April 27, 2007, and Domain Magic Replied on May 4, 2007. The Motion to Dismiss is fully briefed and before the court.

3

## II. DISCUSSION

### A. Standard of Decision

#### *1. Personal Jurisdiction over Out-of-State Defendants*

Once a defendant has challenged a court's exercise of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). It is well established law that "[a] federal court's exercise of personal jurisdiction over a non-resident defendant is proper 'only if a court of the state in which it sits would have such jurisdiction.'" Edelson v. Ch'ien, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005) (quoting Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995)); see also Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1212 (7th Cir. 1984). This court therefore has jurisdiction over this matter "'only if [an Illinois State Court] would have such jurisdiction.'" Edelson, 352 F. Supp. 2d at 866 (quoting Klump, 71 F.3d at 1371).

The inquiry into whether this court has jurisdiction over Domain Magic must therefore begin with "an application of the statutory law of [Illinois]." Jennings v. AC Hydraulic A/S, 383 F.3d 546, 548 (7th Cir. 2004). After considering Illinois' statutory framework concerning jurisdiction over non-resident defendants, the court must then consider whether its exercise of jurisdiction would "comport[] with due process." Id. at 549. The Seventh Circuit has determined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002). One due process inquiry is therefore sufficient. Edelson, 352 F. Supp. 2d at 866.

4

Under the Illinois Long-Arm Statute, 735 ILL. COMP. STAT. 5/2-209(a)(2), an Illinois court may exercise personal jurisdiction over a non-resident defendant "who in person or through an agent [engages in] [t]he commission of a tortious act within this State." See Edelson, 352 F. Supp. 2d at 866. Where the injury alleged is economic in nature, rather than physical or emotional, however, "the plaintiff needs to show more than the 'harm was felt in Illinois,' the plaintiff must also show an 'intent to affect an Illinois interest.'" Id. at 867 (quoting Real Colors, Inc. v. Patel, 974 F. Supp. 645, 649 (N.D. Ill. 1997)); see also Arthur Young & Co. v. Bremer, 554 N.E.2d 671, 676 (Ill. App. Ct. 1990). Illinois courts may also exercise jurisdiction where a defendant transacts "any business within this state." 735 ILL. COMP. STAT. 5/2-209(a)(1).

A court's inquiry into whether its exercise of jurisdiction over a nonresident defendant would be consistent with due process of law should begin with the familiar "minimum contacts" rule articulated by the United States Supreme Court in International Shoe Co. v. Washington:

> Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Supreme Court, in Hanson v. Denckla, went on to explain that the necessary minimum contact with the forum state is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253 (1958).

The Supreme Court elaborated on the notion of "purposeful availment" in Burger King v. Rudzewicz:

> This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random . . . contacts, or of the unilateral activity of

5

another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus, where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burden of litigation in that forum as well.

471 U.S. 462, 475-76 (1985) (citations and internal quotation marks omitted). In addition to the concept of purposeful availment, "[t]he minimum contact requirement contains the notion of foreseeability." Deluxe Ice Cream, 726 F.2d at 1213 n.4 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). When a corporate defendant conducts activities within the forum state sufficient to establish minimum contacts, "it has clear notice that it is subject to suit there." Volkswagen, 444 U.S. at 297.

The court should not stop its inquiry into personal jurisdiction after simply determining that minimum contacts exist, however. The court should go on to ask whether exercising personal jurisdiction is reasonable. See Scott Fruehwald, *The Boundary of Personal Jurisdiction: The "Effects Test" and the Protection of Crazy Horse's Name*, 38 J. MARSHALL L. REV. 381, 384 (2004). A further aspect of a court's inquiry into personal jurisdiction is therefore the nature of the relationship among "the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). "This relationship must be such that it is reasonable to require a nonresident corporation to defend a suit in the forum state in the context of our federal system of government." Deluxe Ice Cream, 726 F.2d at 1213 (citing Volkswagen, 444 U.S. at 292-93).[3]

---

[3] The court notes that the Supreme Court, in Calder v. Jones, 465 U.S. 783 (1984), did not establish a separate and distinct test for personal jurisdiction over out-of-state defendants.

The Supreme Court has indicated that courts may exercise one of two sorts of jurisdiction over out-of-state defendants: general or specific. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). "General jurisdiction exists when the defendant has 'continuous and systematic' contacts with the forum state." Edelson, 352 F. Supp. 2d at 866 (quoting Helicopteros, 466 U.S. at 416). Where defendant has such contacts with the forum state, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." Hyatt, 302 F.3d at 713. In the absence of general jurisdiction, courts may exercise specific jurisdiction, which is limited to cases where the "litigation arises out of or is related to [the defendant's contacts with the forum state]." Logan Productions v. Optibase, 103 F.3d 49, 52 (7th Cir. 1996). In determining "whether it has jurisdiction, a court is not restricted to the pleadings, but may instead review evidence and resolve factual disputes concerning the existence of jurisdiction without converting the motion into one for summary judgment." Friends of Panamint Valley v. Kempthorne, 499 F. Supp.2d 1165, 1171 (E.D. Cal. 2007) (citing McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988)).

### 2. *Personal Jurisdiction and the Internet*

Since its inception in the early 1990s, the Internet has evolved from the refuge of a relative handful of tech-savvy computer literates, to an indispensable tool used by millions worldwide for education, entertainment, communication, and commerce. See Ross Shannon, *The*

---

"[T]he so-called 'effects' test is merely another way of assessing the defendant's relevant contacts with the forum State." Wallace v. Herron, 778 F.2d 391, 395 (7th Cir. 1985). Under the "effects test," a court may exercise jurisdiction over an out-of-state defendant when that defendant, acting outside a state, causes harm within that state. Calder, 465 U.S. at 789.

7

*History of the Net,* at: http://www.yourhtmlsource.com/starthere/historyofthenet.html. Businesses now routinely maintain Internet websites which offer consumers the opportunity to communicate directly with these businesses and other consumers, and where consumers can gather information about and purchase the companies' products and services. These websites are accessible anywhere an individual has a computer, including, obviously, all fifty of the United States. The pervasiveness of the Internet, and the wide range of Internet activities available to consumers, poses interesting jurisdictional issues for courts. "The type of Internet activity that is sufficient to establish personal jurisdiction remains an emerging area of jurisprudence." Bombliss v. Cornelsen, 824 N.E.2d 1175, 1180 (Ill. App. Ct. 2005).

Perhaps the seminal case involving the Internet and personal jurisdiction over nonresident defendants is Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997) (McLaughlin, J.). In Zippo, Zippo Manufacturing ("Manufacturing") (a Pennsylvania corporation) sued Zippo Dot Com ("Dot Com") (a California corporation), alleging, *inter alia*, trademark infringement. Id. at 1121. The crux of Manufacturing's complaint was the allegation that Dot Com was unlawfully using the trademarked "Zippo" name on Dot Com's website. Id. Dot Com moved the court to dismiss for lack of personal jurisdiction. Id.

Dot Com operated this website from its offices in California, and had no offices, employees, or agents located in Pennsylvania. Id. However, approximately 3,000 of Dot Com's 140,000 paying subscribers to its website were residents of Pennsylvania, and Dot Com had entered into agreements with seven Internet service providers in Pennsylvania so that its subscribers in that state could access the site. Id. The Pennsylvania district court was therefore presented with the following question: whether the nonresident defendant's Internet presence in

Pennsylvania, combined with its contractual obligations with Pennsylvania entities, established sufficient "minimum contacts" for the court to exercise personal jurisdiction over the defendant.

In addressing the issue of personal jurisdiction and Internet websites, the district court established what it called a "sliding scale" analysis. Id. at 1124. Central to this "sliding scale" analysis is the notion that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. Judge McLaughlin described the "sliding scale" as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. (internal quotation marks and citations omitted). Judge McLaughlin went on to find that Dot Com's "conducting of electronic commerce with Pennsylvania residents" over the Internet, by contracting with 3,000 Pennsylvania residents and seven Internet access providers in Pennsylvania, placed Dot Com into the category of "doing business over the internet." Id. at 1225-26. The court therefore determined that it could exercise personal jurisdiction over Dot Com. Id. at 1128.

The Seventh Circuit has also indicated that some level of website interactivity is necessary in order for personal jurisdiction to be "premised on the maintenance of Internet sites."

9

Jennings, 383 F.3d at 549. "The exercise of personal jurisdiction based on the maintenance of a passive website is impermissible because the defendant is not directing its business activities toward consumers in the forum state in particular." Id. at 549-50. District courts in the Northern District of Illinois have also adopted the Zippo court's "sliding scale" analysis. E.g., George S. May Intern. Co. v. Xcentric Ventures, LLC., 409 F. Supp. 2d 1052, 1055 (N.D. Ill. 2006) (Norgle, J.); Publications Int'l, Ltd. v. Burke/Triolo, Inc., 121 F. Supp. 2d 1178, 1182 (N.D. Ill. 2000); Berthold Types Ltd. v. European Mikrograf Corp., 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000). Illinois courts have adopted the "sliding scale" approach as well. Bombliss, 824 N.E.2d at 1180; LaRochelle v. Allamian, 836 N.E.2d 176, 184-85 (Ill. App. Ct. 2005).[4] This court will therefore analyze the question of whether Domain Magic's Internet contacts with Illinois are sufficient for the court to exercise personal jurisdiction using the Zippo court's "sliding scale" approach.

## B. Domain Magic's Failure to Answer Discovery Requests

As an initial matter, the court notes that Domain Magic has failed to respond to CAF's Interrogatories, and a court order directing the company to answer specific questions relating to financial compensation it received from the offending website. On June 20, 2007, the court held a status hearing wherein it requested Domain Magic to state whether it received payment from "click-through" revenue on its site. On July 31, 2007, the court granted Domain Magic an additional 21 days to respond to all outstanding discovery requests.

---

[4] Other Circuit Courts of Appeals have also adopted the Zippo approach. See Lakin v. Prudential Securities, Inc., 348 F.3d 704 (8th Cir. 2003); ALS Scan, Inc. v. Digital Service Consultants, 293 F.3d 707 (4th Cir. 2002); Soma Med. Int'l v. Std. Chtd. Bank, 196 F.3d 1292 (10th Cir. 1999); Mink v. AAAA Development LLC, 190 F.3d 333 (5th Cir. 1999); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997).

Domain Magic has not answered the question of whether it receives payment when users click on the links posted on its website. CAF states that it sent Interrogatories to Domain Magic after the June 20 status hearing, yet never received a response. Pl.'s Report, at 2-3. Additionally, on September 6, 2007, Domain Magic's counsel filed a document styled "Report to the Court Regarding Discovery." In this Report, counsel states that he has "not received the additional discovery requested from Defendant." Def.'s Report, ¶ 3. In his affidavit attached to the Report, counsel states that he has been unable to contact Domain Magic in regards to CAF's Interrogatories. Id., Ex. A, ¶ 3. However, counsel then states that Domain Magic has informed him that "all advertising revenue generated from the second-level domain name, 'chicagoarchitecture.org,' resulted solely from out-of-state clicks on hyperlinks contained on the portal web page associated with [chicagoarchitecture.org]." Id. Counsel submits no evidence to support this conclusion.

Moreover, CAF informs the court that on June 19, 2007, Domain Magic filed "Articles of Dissolution" in Tallahassee, Florida. Michael Barnett ("Barnett"), Domain Magic's registered agent certified in these documents that "[T]here are no suits pending against the company in any court." Pl.s' Mot. for Default, Ex. B. This occurred despite the fact that CAF telephoned Barnett to advise him of the Complaint. See Compl., ¶ 20.

Pursuant to Federal Rule of Civil Procedure 37, "[I]f a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just." Rule 37 "provides that evasive or incomplete disclosures, answers or responses are to be treated as failures to disclose, answer or respond." In re Thomas Consolidated Industries, Inc., 456 F.3d 719, 725 (7th Cir. 2006). Moreover, a district court has

11

broad discretion to order sanctions for failure to comply with discovery. See id., at 724.

The court draws a negative inference from Domain Magic's failure to respond to CAF's Interrogatories, as well as its failure to Respond to the court's Order of June 20, 2007. "District courts should only impose sanctions that are 'proportionate to the circumstances surrounding a party's failure to comply with discovery rules.'" Rice v. City of Chicago, 333 F.3d 780, 784 (7th Cir. 2003) (quoting Melendez v. Illinois Bell Tel. Co., 79 F.3d 661, 662 (7th Cir. 1996)).

As a result of this negative inference, the court finds that Domain Magic did receive payment generated by "click-through," advertising, and other revenue through use of the domain name "chicagoarchitecturefoundation.org," as described in Diamond's affidavit. See Pl.'s Resp., Ex. 1. This conclusion is proportionate given the circumstances of this litigation. See Rice, 333 F.3d at 780. CAF sent its Interrogatories to Domain Magic on July 27, 2007. As of October 11, 2007, Domain Magic has yet to respond. Domain Magic has also failed to comply with the court's order of July 31, 2007, wherein the court directed Domain Magic to respond to all outstanding discovery requests. Domain Magic has willfully refused to answer these Interrogatories and has failed to comply with disclosure orders. Therefore, the court concludes that Domain Magic has generated revenue from its use of CAF's trademark, through Illinois residents clicking on links found on the offending website.

## C. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

Domain Magic asserts that, as out-of-state Defendants with no minimum contacts with the state of Illinois, a federal district court sitting in Illinois has no jurisdiction over the company. Domain Magic additionally claims that it merely maintains a passive website, which does not conduct business in Illinois. The burden of showing that this court has personal jurisdiction over

12

these defendants therefore falls to CAF. See RAR, Inc., 107 F.3d at 1276.

The court finds that the following contacts with Illinois are sufficient to establish personal jurisdiction over Domain Magic. Domain Magic misappropriated the website of an Illinois corporation for its own economic gain. The offending website displayed the headings "Chicago Architecture Foundation," and "chicagoarchitecturefoundation.org" even though Domain Magic has no affiliation with CAF. Domain Magic's offending webpage also included hyperlinks to various Chicago businesses that offered bike, bus, and boat tours around the city. Some of these businesses were in direct competition with CAF. Any user who clicked on these links was directed to these competing businesses. Domain Magic would receive a payment based on the number of clicks on each hyperlink. Moreover, Paul Counts ("Counts"), the Data Center Manager for Zipa, LLC, the company that provided hosting services for Domain Magic states that, "[T]he content associated with the web page . . . was created strictly for the purpose of providing information about various products and services in and around the Chicago, Illinois area to visitors to the chicagoarchitecturefoundation.org domain name." Counts Aff., ¶ 2.

Additionally, Domain Magic intended for its website to effect Illinois residents. It used CAF's well known trademark, and attached links to non-affiliated companies that conducted businesses solely in Chicago, Illinois, to a webpage with an internet address deceptively similar to CAF's. Not only did Domain Magic earn revenue as a result of unsuspecting individuals clicking on the links found on the offending webpage, but CAF suffered economic loss when potential customers were diverted to other websites as a result of Domain Magic's actions. See Calder, 465 U.S. at 789.

There is no question that Domain Magic's actions satisfy Illinois' Long-Arm statute. Domain Magic has clearly transacted business within the State of Illinois, as it has profited from

individuals clicking on the hyperlinks that were posted on the offending website. See 735 ILL. COMP. STAT. 5/2-209(a)(1); Arthur Young, 554 N.E.2d at 675-76. Domain Magic knew, or should have known that CAF would suffer injury in Illinois, as that is its state of incorporation, and principle place of business. See Calder, 465 U.S. at 789. Most telling, Domain Magic only listed businesses that provided services in the Chicago area on its offending website, thereby targeting individuals located in Illinois.

The court finds that this level of interactivity is enough, under the Zippo standards, for the court to exercise jurisdiction over Defendants. See Zippo, 952 F. Supp. at 1124 ("the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."). The offending site is not a passive website. See Jennings, 383 F.3d at 549 (a passive website "merely makes available information about the company and its products."). As stated previously, Domain Magic earns revenue each time a user clicks on the links attached to the offending webpage. While users can look up services and tours on the offending website, it is Domain Magic who profits from the numerous "hits" it receives each day by unsuspecting users looking for information about CAF. The final question the court should consider is whether the court's exercise of jurisdiction over Domain Magic comports with due process.

Domain Magic's internet activities more than satisfy the minimum contacts standard set by International Shoe, and constitute its purposeful availment of the protection of the laws of Illinois. See Burger King, 471 U.S. at 475-76. By purposefully reaching out to the state of Illinois, targeting a company located in Chicago, and profiting from Illinois citizens, Domain Magic is on notice that it may be subject to suit in this state. See Volkswagen, 444 U.S. at 297.

The only remaining question is thus whether the court should exercise specific or general

14

jurisdiction over Domain Magic. Courts may exercise specific jurisdiction where "the defendant has purposefully established minimum contacts with the forum state, [] the cause of action arises out of or relates to those contacts and [] the exercise of jurisdiction is constitutionally reasonable." Hy Cite Corp. v. BadBusinessBureau.Com, L.L.C., 297 F. Supp. 2d 1154, 1162 (W.D. Wis. 2004). In this case, Domain Magic has established minimum contacts through its Internet activities, specifically from generating revenue due to users clicking on hyperlinks posted on its website. The cause of action in this case relates to Domain Magic's Internet activities concerning the infringement of CAF's trademark, and the court has determined that exercising jurisdiction is constitutionally reasonable. The requirements for specific jurisdiction are therefore met.

"To meet the constitutional requirement for general jurisdiction, the defendant must have 'continuous and systematic general business contacts' with the forum state." Id. at 1161 (quoting Helicoptores, 466 U.S. at 416). In this instance, Domain Magic has developed contacts with Illinois. As the court has indicated, Domain Magic misappropriated an Illinois based company's trademark, and generated revenue created by Illinois citizens clicking on the offending website's hyperlinks. The court determines that these activities represent "continuous and systematic" contacts with Illinois. See Helicoptores, 466 U.S at 416. The court therefore finds that the exercise of general jurisdiction over Domain Magic is proper in this case.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Jurisdiction is denied.

IT IS SO ORDERED.

ENTER:

*Charles R Norgle* (signature)

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 10/12/07